IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SCHOLZ DESIGN, INC.                                              PLAINTIFF

vs.                           4:06-cv-1600-RSW

WAYNE AND JULIE LARUE,
DON MALLORY d/b/a MALLORY
CONSTRUCTION, and
QUALITY DESIGNS, INC.                                           DEFENDANTS

## Memorandum Opinion and Order

Defendant Don Mallory ("Mallory") has moved for summary judgment on the Plaintiff's claim for copyright infringement (doc. #45). Mallory argues that Scholz Design, Inc. ("Scholz") cannot present evidence sufficient to meet the elements of its claim because it cannot establish that Mallory copied the home design at issue. The Court **GRANTS** the Defendant's motion, concluding that Mallory did not have access to the copyrighted home design.

**I.   Facts**

Scholz Design, a Delaware corporation with its principal place of business in Ohio, develops and sells architectural home designs and drawings. The Waverly Design, one of these works, was registered with the United States Copyright Office on August 7, 1998. Scholz received two Certificates of Registration – one for "The Waverly A 52" as an architectural drawing and one for "The Waverly A 52" as an architectural work/building not yet

1

constructed.

In 1999, Wayne and Julie Larue ("the Larues") decided to build a home on their Arkansas property. They contacted Mallory, owner of Mallory Construction, to inquire whether he would build their home. Mallory was shown hand-drawn sketches from the Larues of their proposed floor plan, which had been drawn by Julie Larue. However, Mallory informed the Larues that he needed a set of blueprints to construct the house, and he advised the Larues to meet with Quality Designs, Inc. ("Quality Designs") to create these blueprints. Mallory subsequently introduced the Larues to Jimmy Buckman, a designer at Quality Designs, on October 27, 1999.

During this time, Wayne Larue had several communications with Scholz regarding home designs. On April 5, 1999, Mr. Larue contacted Scholz and requested information on home designs. On April 6, 1999, Scholz shipped twenty miscellaneous catalog sheets and four miscellaneous brochures to Mr. Larue. Mr. Larue later told Scholz on October 26, 1999, that he liked the Waverly design but had some minor revisions with it. Scholz then shipped the Waverly catalog sheets to Larue on November 9, 1999. A few weeks later, on November 29, 1999, Mr. Larue again contacted Scholz to provide them with his new office number. Scholz responded by sending Mr. Larue catalog sheets for two other designs to ascertain whether he was interested in those plans, but Mr. Larue

did not contact Scholz again and did not ultimately purchase the design plans for the Waverly design.

In January 2000, the Larues gave Mallory a copy of their completed blueprints, and Mallory correspondingly received a building permit to begin construction on the home on February 4, 2000. Mallory completed construction of the home in December 2000.

On August 28, 2006, Mallory received a letter stating that Scholz believed Mallory had infringed its copyright. Scholz filed its First Amended Complaint on May 17, 2007, alleging copyright infringement of the Waverly Design against the Larues, Mallory, and Quality Designs.

**II. Discussion**

    **A.  Summary Judgment Standard**

"Under Federal Rule of Civil Procedure 56, Summary Judgment is mandated where depositions, discovery responses and affidavits show that 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Id. (citing Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986)).  While the evidence will be viewed in a light most favorable to the nonmoving party, the nonmoving party may not rest upon mere allegations, and rather must demonstrate through specific facts that a genuine issue for trial exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

**B.   Access to the Copyrighted Work**

To prevail on a copyright infringement claim, the plaintiff must prove it had ownership of a valid copyright and copying of the original elements of the work.  Taylor Corp. v. Four Seasons Greetings, LLC., 403 F.3d 958, 962-63 (8th Cir. 2005).  In the absence of direct evidence of copying, the plaintiff may establish an inference of copying by proving that the defendant had access to the copyrighted work and there was a substantial similarity between the two works at issue.  Id. at 964.

In this case, Mallory contends he had no access because he never viewed Scholz's copyrighted home design.  Access may be established where the defendant "had an 'opportunity to view or copy'" the work at issue.  Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 942 (8th Cir. 1992) (citing Sid & Mary Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1172 (9th Cir. 1977)).  However, it is not enough to show that there is only a "bare possibility" of access.  Id. (citing Ferguson v. Nat'l Broadcasting Co., 584 F.2d 111, 113 (5th Cir. 1978)

(holding that a finding of access based upon mere speculation or conjecture is impermissible).

Scholz argues it does not have to prove that Mallory actually saw the design at issue; rather, it must prove only that he had the mere opportunity to see the work. In its argument, Scholz relies upon the "corporate receipt doctrine" discussed in <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 53 (2d Cir. 2003), which provides that access may be inferred where there is a close relationship between a third party intermediary and the alleged infringer. While this relationship may be established in a corporate context where a supervisor works with the alleged infringer, it may also extend to other relationships where an intermediary is in a position to provide suggestions to the alleged copier. <u>Id.</u>

In <u>Jorgensen</u>, the Second Circuit Court of Appeals distinguished the sufficiency of the evidence of access between different defendants. According to the court, "it is the defendant seeking summary judgment who must demonstrate a lack of evidence supporting an essential element of plaintiff's claim." <u>Id.</u> at 55. Accordingly, one set of defendants met this standard by producing a sworn statement of a company producer who stated that he never forwarded the copyrighted work to the alleged infringers. <u>Id.</u> at 52. The plaintiff's only argument in response was mere speculation that the alleged infringer came

5

across the work at issue.  Id. at 53.

The other defendants, however, did not produce any evidence establishing a lack of a relationship between themselves and the intermediary during the relevant time period.  Id. at 55.  The court noted there could be no reasonable inference of access by the alleged infringer simply because the intermediary had access to the copyrighted work.  Id.  However, the defendants, "who undoubtably possess[ed] information about the time frame," did not produce any evidence showing they did not have a relationship during the relevant time period, and thus the court found there was a reasonable possibility of access.  Id. at 55-56.

In this case, Scholz rests its argument largely on inferences drawn from the relationship between Mallory and the Larues.  However, Mallory produced affidavits from himself, and more significantly, from Mr. Larue, dispelling these inferences and showing that he did not have access to the copyrighted work.  Mr. Larue, the homeowner and another defendant in this case, corroborates Mallory's claims that he did not participate in the design of the blueprints of the home.  Larue also asserts that he never brought any Scholz materials to any meetings with Mallory, nor was Scholz discussed.  Mallory's only involvement was to suggest to Mr. Larue that Quality Designs be used to draw up professional blueprints, and later using these blueprints to construct the home.  Scholz's reliance on inferences and the

6

possibility of access is thus unpersuasive when nearly all of the evidence expressly denies any access by Mallory.  Id. at 52-53.

Scholz also claims the discovery responses provided by the Larues and Quality Designs establish a dispute of material fact. In each of these interrogatories, Mallory is named as a participant in the design of the exterior and interior of the home.  While Scholz argues this general interrogatory response is enough to support denial of Mallory's summary judgment motion, the Court agrees with Mallory that the existence of a disputed issue of non-material fact is not sufficient, particularly where Mallory has provided substantial evidence showing his lack of access.  Surely, Mallory participated in the design of the house when he met with the Larues and looked over their initial plans, and then suggested they meet with Quality Designs to have blueprints drawn up that he would later use to build the home. This does not establish that he had access to copyrighted designs of Scholz, however, which is further supported in the very same interrogatories Scholz relies upon.  Both the Larues and Quality Designs expressly state in their interrogatory responses that they never discussed with Mallory any copyright issues relating to the design of the house.

Finally, Scholz resists Mallory's summary judgment motion by providing an affidavit from its president, Christopher Gibson. Once again, nothing in this affidavit, nor in the other documents

provided by Scholz, establishes any access by Mallory, and the statements instead center around the Larues' conduct.  Mallory is not even mentioned once in this affidavit.  Similar to the plaintiff in Jorgenson, Scholz relies upon mere speculation in an attempt to impute access from the Larues to Mallory.  351 F.3d at 53.  However, it is antithetical for Scholz to rely on inferences from the Larues' conduct when Mr. Larue himself states that Mallory was not involved at all with any copyrighted material of Scholz.  Thus, Scholz cannot support its argument solely on the "bare possibility" of access.  Moore, 972 F.2d at 942.  Mallory, as the defendant seeking summary judgment, has demonstrated a lack of evidence supporting an essential element of Scholz's claim because Scholz cannot prove access, and thus cannot prove copying by Mallory, which it is required to do to establish its copyright infringement claim.  Jorgensen, 351 F.3d at 55.

### III. Conclusion

Scholz Design has not shown that Mallory had access to the copyrighted design.  Without access, Scholz cannot establish that Mallory infringed on its copyright.  Therefore, the Court **GRANTS** the Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated this 14th day of August, 2008.

RODNEY S. WEBB, District Judge
United States District Court